## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DANIEL SIMMONS,** | : |
| **Plaintiff,** | |
| | |
| **v.** | **: Case No:  1:07 cv 00493** |
| | **JUDGE JAMES ROBERTSON** |
| **DISTRICT OF COLUMBIA** | : |
| **And JOHN DOES 1-5,** | |
| **Defendants.** | : |

### PLAINTIFF'S, DANIEL SIMMONS, OPPOSING POINTS AND AUTHORITIES TO DEFENDANT'S, DISTRICT OF COLUMBIA, MOTION TO DISMISS THE COMPLAINT

Plaintiff, Daniel Simmons, by and through his Attorney of Record, Joan A. Harvill, respectfully Opposes Defendant's Motion to Dismiss the Complaint and as grounds therefore avers the following:

**<u>History of the Case:</u>**

1.      On October 29, 2005 Plaintiff, Daniel Simmons, was deprived of his Constitutional Right under the Fourth Amendment to the U.S. Constitution to be free of illegal search and seizure.  He was charged without probable cause with possession of cocaine with intent to distribute.  He was detained at the D.C. Detention Center for several weeks after the charges were dropped; was subjected to a body cavity strip search after the charges were dropped and housed in a cell with a convicted murderer constituting violations of his Fifth Amendment rights to Due Process, Negligence and Negligent Supervision, Training and Hiring.

2.      On March 15, 2007 Plaintiff filed his Complaint at U.S. District Court sounding in civil rights and constitutional law deprivations arising under U.S.C. Title 42-1983, the Fourth, Fifth and Eighth Amendments to the U.S. Constitution and the common

1

law torts of Negligence, and Negligent supervision, training and hiring.

3.    On May 30, 2007 Defendant, the District of Columbia, filed its Motion to Dismiss pursuant to F.R.C.P. 12 (b) (1) and 12 (b) (6).  Five John Doe Defendants, employees and officials of the District of Columbia, have not been identified yet or served with the Complaint.

**POINTS AND AUTHORITIES:**

<u>**STANDARD OF REVIEW**</u>

I.    In ruling on a Motion to Dismiss for want of subject matter jurisdiction pursuant to F.R.C.P. 12 (b) (1), the allegations of the Complaint should be construed favorably to the pleader, <u>Hohri v. United States</u>, 782 F.2d 227 (D.C. Cir. 1986), citing <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (l974).  The court may dismiss for lack of subject-matter jurisdiction only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief, <u>Empagran S.A. v F. Hoffman-Larouche, Ltd.</u>, 315 F.3d. 338, 343 (D.C. Cir. 2003).

The court is not limited to examining the allegations of the complaint, but may look to extra-pleading material in deciding the Rule 12( b) (1) motion, <u>IQBAL  v. Superior Court of the District of Columbia</u>, (D.C. 6-28-2007) (Civil Action No: 07-408 (RMU) Document No: 7, Civil Action No: 07-452, United States District Court, D. Columbia.

II.    Dismissal of a complaint for failure to state a claim pursuant to Rule 12 (b) (6) is proper only when a plaintiff can prove no set of facts in support of his claim which would entitle him to relief, <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 514 (2002).  In making

this determination, a court must accept all well-pleaded factual assertions in the complaint as true and draw all reasonable inferences in favor of the plaintiff, *See* <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984).

The distinctions between 12 (b) (1) and 12 (b) (6) are important. Rule 12 (b) (1) presents a threshold challenge to the court's jurisdiction, whereas 12 (b) (6) presents a ruling on the merits with res judicata effects, *See* <u>Exchange National Bank of Chicago v. Touche Ross & Co.</u>, 514 F.2d 1126, 1130-31 (2nd Cir. 1976).

The mandatory language in which "Rule 12 (b)'s proviso is couched underscores the importance of providing plaintiffs with the essential safeguards of summary judgment procedure whenever they face a motion to dismiss that turns on questions of fact, <u>Gordon v. National Youth Work Alliance</u>, 675 F.2d 356 (D.C. Cir. 1982).

When addressing a motion to dismiss under Rule 12 (b) (6), the court generally may not look outside the facts contained within the four corners of the complaint unless it treats the motion to dismiss as a motion for summary judgment, <u>Currier v. Postmaster Gen.</u>, 304 F.3d 87, 88 (D.C. Cir. 2002).

"A Rule 12 (b) (6) motion may not be converted into a motion for summary judgment where the party moving for summary judgment failed to file a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement", L Civil Rule 7 (h); *see also,* L Civ. Rule 56.1, Where a movant fails to comply with Local Rules by not providing such a statement, the court may not consider the motion as one for summary judgment, but only as a Rule 12 (b) (6) motion and matters outside the pleadings may not be considered, <u>Tabb v. District of Columbia</u>, 477 F. Supp. 2d 185

(D.C. 2007), citing, Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002); Arrington v. United States, 473 F. 3d 329, 335 (D.C. Cir. 2006).

In this case Defendant indirectly asks the court to convert his motion to one for Summary Judgment. Since the court has jurisdiction of U.S.C. Title 42-1983 claims arising under the Constitution, Defendant's Rule 12 (b) (1) motion must fail, Reese Bros. Inc., v. U.S. Postal Service, 477 F. Supp. 2d 31 (2007), citing Powell v. McCormack, 395 U.S. 486, 515 (1969). Because Defendant failed to file a Statement of material facts to which there is no genuine dispute, his motion may only be consider as a motion under Rule 12 (b (6).

### III.    COUNT 1 - U.S.C. TITLE 42-1983 FOURTH AMENDMENT CONSTITUTIONAL AND CIVIL RIGHTS VIOLATIONS

Plaintiff, Daniel Simmons, alleged factual averments in his complaint on file that an undercover MPD police officer, John Doe 1, approached him and asked him where he could get some "crack". Daniel Simmons did not offer to sell John Doe 1 any "crack". When a woman, unknown to Daniel Simmons, approached Defendant, John Doe 1, from behind, she offered to sell Defendant, John Doe 1, some "crack". Defendant, John Doe 1, paid the woman $20.00 for crack and received in return two packages of crack cocaine.

Notwithstanding the fact that Plaintiff, Daniel Simmons, had no crack to sell and did not offer to sell Defendant, John Doe 1, any crack Defendant, John Doe 1, arrested Plaintiff, Daniel Simmons, and charged him with felony possession of cocaine with intent to distribute.

The crime of felony possession of cocaine with intent to distribute has two elements, (1) That the accused distributed a controlled substance, and (2) That the accused distributed the controlled substance knowingly and intentionally, *See* D.C. Code

Title 48-904.01 (a) (1) (2001); Criminal Jury Instructions for the District of Columbia, No. 4.30. (4th ed, 1996 Supp.).

Distribution is defined by statute, D.C. Code Title 48-901.02 (9) (2001), as "the actual, constructive, or attempted transfer from one person to another other than by administering or dispensing of a controlled substance, whether or not there is any agency relationship."

"Transfer" is defined by case law as, "to carry or take from one person or place to another.", Long v. United States, 623 A.2d 1144, 1147 (D.C. 1993), citing Durham v. United States, 743 A.2d 196, 201 (D.C. 1999), where it was held, "any act of giving narcotics to another person constitutes an act of unlawful distribution".

In Long v. United States, supra, the court teaches that since as early as 1989, the Court has issued a series of decisions defining the term "distribute", and set forth the cases defining the word "distribute" by citing the following cases: In Malloy v. United States, 605 A.2d 59, 61 (D.C. 1992) the court summarized the law as follows: "A sale or an exchange of money for drugs is not required under the statute." See, Wright v. United States, 588 A.2d 260 (DC. 1991) "giving or sharing of drugs with another constitutes distribution under the law". "An intention to (give or) share is evidence of intent to distribute" Chambers v. United States, 564 A.2d 26, 31 & n. 10 (D.C. 1989)."

Thus it is seen the law in the District of Columbia has been long settled and requires a transfer of controlled substance from one person to another in order to constitute the offense of Distribution of a Controlled Substance.

D.C. Police Officers are bound to know the laws that they enforce, See Plaintiff's Exhibit "1" for MPD General Orders, Order 2.1:13. Defendant, John Doe 1, knew or

should have known that Plaintiff had not distributed a controlled substance since

Plaintiff, Daniel Simmons, did not possess a controlled substance when approached by

the undercover officer and did not offer to sell any to the undercover officer.

Additionally the police report, Defendant's Exhibit "1", relates 19 bags of crack cocaine

and a $20.00 police marked bill was found on the female who sold the crack cocaine to

the Defendant, John Doe 1.  There was no money and no crack seized from Plaintiff

according to that police report. See MPD General Orders, Order 8 on pg. 11 which

provides all prisoners shall be searched upon arrest and all evidence seized, Plaintiff's

Exhibit "2".

The policy of the police department to enlist the aid of bystanders to purchase

controlled substances in a high drug area is borne out by the sworn police statement of

John Doe 1, Defendant herein, when he writes he "handed (1) of the clear zips which

contained a white rock substance to D 1 for his help".  D 1 is identified as Daniel

Simmons.

By giving Daniel Simmons a piece of crack cocaine, the undercover police officer,

Defendant, John Doe 1, was guilty of distribution of a controlled substance, *See* Wright

v. United States, 588 A.2d 260 (D.C. 1991) (the giving or sharing of drugs with another

constitutes distribution under the law).  Obviously the undercover police officer would

not have admitted under oath that he committed the crime of distribution of a controlled

substance unless the action was promoted and excused by the Metropolitan Police

Department Policy of enlisting the aid of innocent bystanders to locate drug sellers and to

reward them with a portion of the controlled substance purchased in an undercover drug

buy as a pretext to arrest the bystander on a charge of distribution of controlled

substances.

If the sworn statement of the undercover police officer is true, the most Daniel Simmons could have been charged with is possession of a controlled substance, the crack, the undercover police officer Defendant allegedly gave him.

MPD police officers are purportedly trained in the law of arrest, search and seizure,  See, Plaintiff's Exhibit "3" where the right of the people to be secure against unreasonable search and seizure is set forth and probable cause defined by MPD teaching materials.

Hence the undercover police officer, Defendant John Doe 1, knew or should have known his action was violating a long recognized Constitutional right of Plaintiff to be free of illegal search and seizure.  The undercover police officer knew or should have known he had no probable cause to arrest Plaintiff for distribution of controlled substances as he had been taught or should have been taught according to police manual that probable cause is a set of facts that would lead a reasonable, prudent, and cautious officer to believe that a crime had been committed and a certain person committed it.  In this case, the certain person that committed the crime of distribution was the female seller not Plaintiff, Daniel Simmons.  That the police officer lacked probable cause to arrest Plaintiff is borne out by the fact the Assistant U..S. Attorney on November 10, 2005 entered a Praecipe directing the Clerk of the Court to dismiss the felony charge of possession of cocaine with intent to distribute filed against Plaintiff.

In every case surveyed where probable cause to arrest was sustained on appeal, the accused was found in possession of or in the process of selling controlled substances, See, the following for some examples:  <u>Anthony v. United States</u>, 97 CF-63 D.C.

06/07/2007, No. 97-CF 63 where the accused was found in possession of 48 pieces of

crack cocaine; <u>Whatley v. United States</u>, 918 A. 2d 1198 (D.C. 2007), where the

evidence at trial showed Defendant had numerous baggies of rock like substance that

tested positive for cocaine on his body at the time of his arrest; <u>Thomas v. United States</u>,

914 A. 2d 1 (D.C. 2006), where Thomas sold two rocks of cocaine for $20.00 to a

undercover officer who observed several packs of zip baggies with cocaine in his

possession at the time of the arrest; <u>Hawkins v. District of Columbia</u>, 902 A.2d 99 (D.C.

2006), where police found 20 zip lock packages of controlled substances in his car:

<u>Brown v. District of Columbia</u>, 881 A. 2d 580 (D.C. 2005), where police observed

Brown selling controlled substances and saw him place a packet of several bags of a

controlled substances on a fence.

    In every case surveyed, probable cause to arrest for possession with intent to

distribute was only warranted where the accused was either observed selling controlled

substances or was found with numerous packets of controlled substances in his

possession.

    In this case Plaintiff, Daniel Simmons was found with no controlled substances in

his possession or cash from the selling thereof , and was not observed selling any.  Thus

probable cause to arrest for possession of cocaine with intent to distribute was seriously

lacking.

**HEARSAY EVIDENCE:**

    Defendant seeks to admit into evidence as part of Defendant's Exhibit "1" a

sworn Affidavit of Defendant, John Doe 1.   Federal Rules of Evidence, Rule 803 (8) (B)

excludes from evidence "in criminal cases police reports that reflect matters observed by

police officers and other law enforcement personnel" whether submitted as police reports or otherwise.

In <u>Ash v.</u> Reilly, D.C. 2006, Civil Action No. 03-2007 (AK) U.S. District Court, D. Columbia, May 5, 2006, the court citing <u>Crawford v. Jackson</u>, 323 F.3d 123 (D.C. Cir. 2003) teaches that police reports are inherently unreliable evidence of the truth of the allegations because of the "personal and adversarial" relationship between police officers and suspects)". The police reports submitted to bolster the arrest in a criminal case are properly excluded under F.R.E. Rule 803 (8) (B) and established case law.

Defendant's attempt to introduce such hearsay evidence in support of his Motion to Dismiss which hearsay is disputed by Plaintiff, Daniel Simmons, must not be permitted, *See,* compl. @ pg. 2, para. 6, 7, pg. 3, para. 15, pg. 4, para. 16.

**<u>Defendant Misconstrues the Complaint:</u>**

Plaintiff specifically identified those actions that give rise to his Fourth Amendment Claim of deprivation of his right to be free of illegal search and seizure when he alleged he was arrested and charged with possession of a controlled substance, cocaine, with intent to distribute in Case number F 6300-05 since he was not in possession of cocaine and made no attempt to sell cocaine to the undercover officer, Defendant, John Doe 1. Rather a person unknown to Plaintiff, Daniel Simmons, approached Defendant, John Doe 1, and offered to sell him cocaine and did so, compl. Pg. 2, para. 5, 6 7. Pg. 3, para. 15, pg. 4, para. 16, 17, 18, 19.

Next Defendant alleges Plaintiff did not enunciate a policy or custom of the District that caused the deprivation of Plaintiff's Constitutional Right to be free of illegal search and seizure.

The policy of the District of Columbia Police Department to send undercover police officers into areas where controlled substances are sold to pose as buyers to apprehend sellers and their customers is a policy of long standing in the District of Columbia.  As is the artifice of enlisting the support of bystanders or potential buyers in a high drug area to aide the undercover officers in their quest to purchase controlled substances.  The success rate of entrapping a seller is greater if done in the presence of a person known to the seller as a drug user.  A person police seek to use to lure a seller gains nothing by the sale.  A hope of a reward of a drug to an addict is a powerful incentive.  Thus the police custom of rewarding that person with a part of the purchased controlled substance became established.   This custom enables police to not only charge the actual seller with felony possession with intent to distribute, but to charge the unsuspecting bystander who accepts the controlled substance as a reward with the same crime although there is no probable cause to do so.

In this case, the Assistant U.S. Attorney rightfully dismissed the charge of possession of a controlled substance with  intent to distribute since the necessary element of the offense, intent to distribute, is lacking.

Defendant, John Doe 1, a member of the MPD of the District, is duty bound by MPD General Orders to be familiar with the Statutes, Laws and Regulations in force in the District, Pl. Exhibit "1", and the elements of probable cause to arrest, Pl. Exhibit "3".

The custom of undercover police officers to mingle with drug users in a high drug area to lure drug sellers into a sting, and then charge the innocent bystander with the crime of distribution through the artifice of "giving" him a controlled substance clearly violates the Fourth Amendment Right to be free of illegal search and seizure.  Obviously

the innocent bystander did not possess or sell any controlled substance.

      To maintain a USC Title 42-1983 action against the District of Columbia, Plaintiff must "demonstrate a deprivation of his constitutional rights that was caused by a policy, custom or practice of the District of Columbia, or a single municipal decision (that) reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision", McRae v. Olive, 368 F. Supp. 2d 91, 95 (D.D.C. 2005) (quoting Bd. Of the County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403 (1997).  Plaintiff must prove a predicate constitutional violation and show that a custom or policy of the municipality caused the violation, See, Baker v. District of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003) citing the cases set forth below.

      Under Monell v. Dep't. of Social Services, 436 U.S. 658,694, 98 S. Ct. 2018, 2037-38,56 L.Ed. 2d 611 (l978), Plaintiff may state a claim against the District based on a policy or custom without regard to the subjective state of mind of D.C. officials.

      To determine whether Plaintiff has stated a claim for municipal liability, the district court must conduct a two-step inquiry, Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992).  First the court must determine whether the complaint states a claim for a predicate constitutional violation.  If so, the court must determine whether the complaint states a claim that a custom or policy of the municipality caused the violation, Monell, 436 U.S. 694.  Each inquiry is separate and serves different purposes, Farmer v. Brennan, 511 U.S. 825, 840-42 (1994); City of Canton v. Harris, 489 U.S. 378, 388 n.8, (1989).

      Under the first prong, the district court must determine whether the police custom

of using innocent bystanders to gain access to drug dealers, provide the innocent with drugs and use that as a pretext to arrest on felony possession with intent to distribute charge constituted deliberate indifference to a violation of the Fourth Amendment prohibition against illegal search and seizure.

To show deliberate indifference, Plaintiff had to allege police officials had subjective knowledge of the custom complained of and recklessly disregarded the risk. At this stage it is not necessary that District policy makers or employees were implicated. It is only necessary to show Plaintiff suffered constitutional harm.

Under the second prong, the district court should determine whether the complaint stated a claim that a custom or policy of the District of Columbia caused the constitutional violation alleged under the first prong,  Monell, 436 U.S. at 694; Harris, 489 U.S. at 389.  The court must determine whether the plaintiff has alleged an "affirmative link, " City of Oklahoma v. Tuttle, 471 U.S. 808, 823 (1985), such that the custom complained of was the "moving force" behind the constitutional violation, Harris, 489 U.S. at 389.  There are a number of ways in which policy or custom can be set by a municipality to cause it to be liable under U.S.C. Title 42-1983.  Some of these are, the action of a policy maker, such as police official, within the government, City of St. Louis v. Praprotnik, 485 U.S. 112, 123-30 (1988); The adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become "custom", Id. At 130; or the failure of the government to respond to a need (for example, training of employees) in such a manner as to show "deliberate indifference" to the risk that not addressing the need will result in constitutional violations, Daskalea v. District of Columbia, 227 F.3d 433, 441 (D.C. Cir. 2000).

Deliberate indifference is determined by analyzing whether the municipality knew or should have known of the risk of constitutional violations, an objective standard, <u>Farmer</u>, 511 U.S. at 841.  There is no requirement to prove subjective indifference by the District of Columbia under the second prong.

In this case the constitutional deprivation and deliberate indifference were specifically alleged, Compl. Pg. 2 para. 5-8; pg. 3 para. 15; pg. 4, para. 16-19.

Thus all the averments, the factual basis for the allegations, and the ability to prove the constitutional law deprivations required by established case law alleged in Count One were met by Plaintiff.  There is no requirement at this stage, without discovery, to name policy making officials involved in the constitutional law deprivations where John Doe Defendants are named.  The sworn statement of the undercover police officer he gave a controlled substance to Plaintiff constitutes clear evidence the custom of using innocent bystanders to lure drug sellers, and then include the bystander as a seller was a common and accepted police procedure in sting actions promoted, accepted, and encouraged by police officials..

Consequently Defendant's Motion to Dismiss must be denied.

**<u>Defendant Misstates the Law:</u>**

Contrary to the allegation of Defendant, evidence of a single event is probative of a municipal policy, <u>Penbaur v. Cincinnati</u>, 475 U.S. 469 (1986); <u>Owen v. City of Independence</u>, 445 U.S. 622 (1980).

**<u>Qualified Immunity:</u>**

Qualified immunity is available to police officers if their conduct does not violate a "clearly established" statutory or constitutional right of which a reasonable person

would have known, Harlow v. Fitzgerald, 457 U.S. 800 (1982).

To evaluate a claim for qualified immunity, the court must first determine if the facts alleged, taken in the light most favorable to the injured party, show the officer's conduct violated a constitutional right, Brosseau v. Haugen, 543 U.S. 194, 197 (2004).

An "objective reasonableness standard" is used to analyze whether a Fourth Amendment Constitutional Right was violated.  The Court must consider the facts as would have been perceived by a reasonable officer on the scene, Graham v. Connor, 490 U.S. 386, 394 (1989).

Applying these legal principals to the facts alleged in this case, taken in the light most favorable to Plaintiff, the injured party, it is clear Defendants are not entitled to qualified immunity since the right to be free of illegal search and seizure guaranteed by the Fourth Amendment to the U.S. Constitution is a well recognized right in this country of which the Defendants were well aware.

A reasonable officer standing in the shoes of  Defendant, John Doe 1, could not have believed that arresting Plaintiff for felony possession of cocaine with intent to distribute, an innocent bystander to an illegal drug sale between Defendant, John Doe 1, and a female who was a stranger to Plaintiff, was not an illegal search and seizure that violated the Plaintiff's Fourth Amendment Rights under the U.S. Constitution.

Holding Defendant, John Doe 1, responsible for his wrongful actions is in keeping with the Supreme Court's recognition of a need for qualified immunity as opposed to absolute immunity.  The qualified immunity defense instituted in Harlow v. Fitzgerald, 457 U.S. 800 (1982) is described as an "attempt to balance competing values: not only the importance of a damages remedy to protect the rights of citizens, but also the

need to protect officials who are required to exercise discretion and the related public interest in encouraging the vigorous exercise of official authority.

The Defendant's reliance upon <u>Farmer v. Moritsugu</u>, 163 F.3d 610, 616 as a basis to grant qualified immunity to Defendant, John Doe 1, is misplaced.  <u>In Farmer v. Moritsugu</u>, supra, the court held that Farmer enjoyed qualified immunity as he was the Director of BOP medical care in the District of Columbia.  He did not treat or diagnose prisoners rather he directed the prison medical system from Washington, D.C. and had no personal contact with prisoners.  When contacted by a prisoner by mail complaining of lack of medical treatment for transsexuals, he wrote a letter to the prisoner setting forth the constitutionally correct prison policy governing medical and psychological treatment for transsexuals.  He was entitled to qualified immunity since there was no constitutional violation and because it was not incumbent upon Farmer to order any treatment for prisoners rather that was the prerogative of the in house treating physician.  In dicta the court opined if the Director was held personally liable for every prisoner who complained of lack of treatment the burden upon the Director's office would be insurmountable and the office impossible to fill.

In this case there is no attempt to hold Defendant, John Doe 1, liable for every constitutional law violation committed by MPD police officers, but only for his own deliberate, unconstitutional conduct.

The John Doe 1 Defendant in this case is not entitled to qualified immunity.

### IV.  Count 11 U.S.C. Title 42 -1983 Civil and Constitutional Rights Violation of the Fifth Amendment to the U.S. Constitution.

The continued detention of Plaintiff, Daniel Simmons from November 10, 2005, when the U.S. Attorney directed the court clerk to enter an Order of Dismissal of the

charge of felony possession of cocaine with intent to distribute, to December 3, 2005 when Plaintiff was finally released from custody constitutes an unconstitutional deprivation of liberty without due process of law. The D.C. Detention Center's Superintendent of the Washington Asylum and Jail is accountable for the safekeeping of all prisoners legally committed thereto, D.C. Code Title 24-201.15. He is the District's Official charged with the care of the Detention Center and its prisoners, and as such is the city's official decision maker in matters involving the D.C. Detention Center.

The Superintendent cannot abdicate his own federal constitutional responsibility for the fate of pretrial detainees to the court or a release document, Armstrong v. Squadrito, 152 F. 3d. 564 (7th Cir. 1998). It is the Superintendent who is the custodian of the persons incarcerated in the jail, and as such, it is he who is answerable for the legality of their custody, Luck v. Rovenstine, 168 F. 3d 323 (7th Cir. 1999). *See also*, Coleman v. Franz, 754 F. 2d 719, 723 (7th Cir. 1985).

The inquiry the court must make is whether the Defendant acting through its Superintendent violated a constitutional right and if so did the defendant act with culpability. D.C. Detention officials violated Plaintiff's Constitutional Right under the Fifth Amendment to Due Process by subjecting him to an unconstitutional deprivation of his liberty.

Substantive due process protects against governmental arbitrariness, See, City of Sacramento v. Lewis, 523 U.S. 883 (1998), citing Hurtado v.California, 110 U.S. 510, 527. The cognizable level of executive abuse of power is that which shocks the conscience, Collins v. Harker Heights, 503 U.S.115, 129. In City of Sacramento v. Lewis, supra, the Court established another standard, the "deliberately indifferent", to

determine substantive due process claims which is peculiar to prison settings where defendants have the luxury of forethought about an inmate's welfare which is "not only feasible but obligatory". The Court summed up with: "When such extended opportunities to do better are teamed with protracted failure even to care, indifference is truly shocking."

The depth of constitutional concern for protracted detention is explained as follows: "The consequences of prolonged detention may be more serious then the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships" Gerstein v. Pugh, 420 U.S. 103, 114 (1975).

Due process is breached when a municipality makes a deliberate and conscious choice to have no policy which can be fairly characterized as a municipal policy.", City of Canton v. Harris, 489 U.S. 378 (1989).

The District of Columbia since 2004 has had a protracted history of litigation by thousands of inmates subjected to illegal strip-searches and detained for too long. Since 2004 the District has paid $12,000,000.00 (twelve million dollars) to settle these claims according to Freedom of Information Documents obtained by the Washington Times, Plaintiff's Exhibit "5".

In Armstrong v. Squadrito, 152 F. 3d 564 (7th Cir. 1998), supra, the court held confinement officers of the jail liable where the jail had a history of prolonged detention cases coupled with a policy that ignored the danger.

In *Armstrong*, supra, at 579, the court teaches: " A policy that ignores whether the jail has the authority for long term confinement seems to be a policy of deliberate

indifference. .. Furthermore, jailors hold not only the keys to the jail, but also the knowledge of who sits in the jail, and for how long they have sat there.  They are the ones directly depriving detainees of liberty…The jail acts at its own peril if it passes responsibility off on another party - whether the courts or the prosecutor.  While the Constitution does not impose an affirmative duty on jail officials, it does hold them responsible when their failure to devise adequate policies  results in injury".

In this case Defendant attempts to pass responsibility for the prolonged detention of Plaintiff after the criminal charge had been dropped onto the D.C. Superior Court Clerk when the jail had no viable policy governing procedures to follow regarding release of prisoners who have been detained too long.  The lack of a viable policy coupled with thousands of claims for prolonged illegal detention put the District on notice that it had a problem.  A problem the District has failed to address which constitutes deliberate indifference.  The Chief Administrator of the D.C. Detention Center is not individually liable for these failings, but as Chief Official for the District of Columbia, the city is liable under <u>Monell v. Dept. of Social Services</u>, supra.

**V  Count Three  USC Title 42-1983 Civil and Constitutional Violations of the Eighth Amendment of the U.S. Constitution**

Plaintiff asks leave to amend the Complaint to allege in Count Three that the deprivations complained of arose under the Fifth Amendment to the U.S. Constitution rather than the Eighth Amendment.

Plaintiff's Exhibit "5" summarizing documents obtained under the Freedom of Information Act by the Washington Times constitutes evidence that thousands of claims have been brought against the District of Columbia over illegal strip searches that violate the Fifth Amendment Right of Plaintiff to Due Process of Law.  Such proof corroborates

Plaintiffs allegations in para. 28, 29, 30, 31.

D.C. Code Title 24-1202 (a) (b)  provides a detention facility shall be constructed for the District to house not more than 1,500 inmates.  The facility shall house primarily pretrial detainees, persons convicted of misdemeanors, and parole violators held pending a parole revocation hearing.  This statute provides proof that housing Plaintiff with a convicted murderer violated D.C. Code Title 24-1202 (a) (b), and jeopardized the safety of Plaintiff when he was housed with a person convicted of a "violent offense" which is distinct from a dangerous offense under governing statutes, D.C. Code Title 23-1322 (b) (1) (A).

All factual averments necessary to maintain the action have been properly pled. For all the reasons set forth herein Plaintiff has pled and will be able to prove that Defendant has violated Plaintiff's Constitutional Rights, and that the resulting injury was caused by a custom or policy of the District or the lack of governing policies and procedures which amount to deliberate indifference as described in County of Sacramento v. Lewis, supra.

### V1.  Count Four, Negligence and Count Five Negligent Supervision, Training and Hiring

When a federal court has an independent basis for exercising federal jurisdiction, the court may also exercise supplemental jurisdiction over "claims that are so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution",  28 U.S.C. section 1367(a); United Mine Workers of Am. V. Gibbs, 383 U.S. 715, 725 (1966).

While federal courts have the discretion to decline to exercise jurisdiction over state claims, the Court concludes that "considerations of judicial economy, convenience

and fairness to litigants" favor the several claims being litigated in a single proceeding,

Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349 (1988).

Plaintiff has properly pled his four federal claims arising under U.S.C. Title 42-1983 to withstand Defendant's motion to dismiss.  The federal claims are so closely related to his two state court claims, Negligence and Negligent Supervision, Training and Hiring, it enables this court to exercise supplemental jurisdiction of the state court claims.

**CONCLUSION**

For all the reasons set forth herein, Plaintiff respectfully moves the Court to deny Defendant's motion to dismiss the complaint.

Respectfully,

  /s/   Joan A. Harvill

 Joan A. Harvill
D.C. Bar No: 309112
Attorney for Plaintiff
1629 K. Street N.W.
Suite 300
Washington, D.C. 20006
(202) 466-6346

CERTIFICATE OF SERVICE:

I certify a copy of Plaintiff's Opposing Points and Authorities to Defendant's

Motion to Dismiss the Complaint was electronically filed with the Court, and

electronically served upon the following on July 12, 2007:

Robert J. Hildum, Assistant Attorney General, Ellen Efros, Chief Equity 1, 441 4th Street

N.W., 6th Floor South, Washington, D.C. 20001.

    /s/  Joan A. Harvill

Joan A. Harvill

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

**DANIEL SIMMONS,**                              :
                    **Plaintiff,**

**v.**                                           :          **Case No: 1:07 cv 00493**
                                                            **JUDGE JAMES ROBERTSON**

**DISTRICT OF COLUMBIA,**                        :
**AND JOHN DOES 1-5.**
                    **Defendants**               :

**ORDER**

        Upon consideration of Plaintiff's Opposing Points and Authorities to Defendant's

Motion to Dismiss the Complaint, the pleadings on file, and it appearing that the relief

requested by Defendants should be denied,

It is Hereby Ordered that,

Defendant's Motion to Dismiss the Complaint is denied.

Plaintiff shall have 20 days from the date of this Order to Amend the Complaint to

change the Eighth Amendment violations alleged to Fifth Amendment violations.

DATED:_____          SIGNED:_____
                            JAMES ROBERTSON U.S. DISTRICT
                            COURT JUDGE

COPIES TO:

Joan A. Harvill, Esq.
1629 K. Street N.W.
Suite 300
Washington, D.C. 20006

Robert Hildum,
Assistant Attorney General
441 4th Street N.W.
6th Floor South
Washington, D.C. 20001