# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

——————————————————

| | |
|---|---|
| **DANIEL SIMMONS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Civil Action No. 07-493 (RCL)** |
| **THE DISTRICT OF COLUMBIA,** ) | |
| **and JOHN DOES 1–5,** ) | |
| ) | |
| **Defendants.** ) | |
| ——————————————————) | |

## MEMORANDUM & ORDER

Presently before the Court is Defendants' Motion [5] to Dismiss plaintiff's complaint, which was filed on March 15, 2007.  Upon consideration of this motion, the opposition and reply thereto, the applicable law, and the record herein, the Court finds that defendants' motion [5] should be GRANTED in part and DENIED in part.

## I.  BACKGROUND

The allegations in this case are similar, if not identical, to the claims made in two class action lawsuits previously before this Court, *Bynum v. District of Columbia*, Civil Action No. 02-956 (RCL) and *Barnes v. District of Columbia*, Civil Action No. 06-315 (RCL).  In those cases and in this one, plaintiffs alleged that they had been detained by the District of Columbia's Department of Corrections ("DOC") beyond the point at which their release had been ordered. Plaintiffs in the prior two suits further alleged that they were subjected to strip searches during the period of their overdetention.  In the instant matter, plaintiff claims, *inter alia*, that he was subjected to a body cavity strip search during the weeks after charges against him were dropped.

Plaintiff brought this suit under 42 U.S.C. § 1983, alleging that:  (1) he was illegally

arrested and unlawfully detained in violation of the Fourth Amendment; (2) his overdetention is

in violation of his Fifth Amendment right to due process; and (3) he was subjected to a body

cavity strip search and dangerous cell conditions which deprived him of his Eighth Amendment

right to be free of cruel and unusual punishment.[1]  (*See* Compl. ¶¶ 13–21.)  Plaintiff further

alleges that defendants were negligent in failing to expedite his release and that the District was

negligent in the supervision, training and hiring of its agents and employees.  (*See id*. ¶¶ 33–40.)

Defendants have moved to dismiss the complaint for lack of jurisdiction pursuant to Federal Rule

of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

## II.  DISCUSSION

### A.     Legal Standard

When a party files a motion to dismiss for lack of subject-matter jurisdiction under Rule

12(b)(1), "the plaintiff[ ] bear[s] the burden of proving by a preponderance of the evidence that

the Court has subject matter jurisdiction."  *Biton v. Palestinian Interim Self-Gov't Auth.*, 310 F.

Supp. 2d 172, 176 (D.D.C. 2004).  In turn, the court has an "affirmative obligation to ensure that

it is acting within the scope of its jurisdictional authority," *see Grand Lodge of Fraternal Order*

*of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001), which includes the obligation to

determine whether the plaintiff's claims are moot.  *See Mine Reclamation Corp. v. FERC*, 30

F.3d 1519, 1522 (D.C. Cir. 1994).  A court may consider material other than the allegations of

the complaint in determining whether it has jurisdiction, but must accept the factual allegations

---

[1] Plaintiff concedes that the allegations in Count Three of his complaint were improperly pled under the Eighth Amendment.  (*See* Pl.'s Opp'n 18.)  Plaintiff now asks this Court for leave to amend his complaint to allege in Count Three that the deprivations complained of arose under the Fifth Amendment rather than the Eighth.  (*See id.*)

in the complaint as true. *See Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005).

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), this Court will dismiss a claim if the plaintiff fails to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007) (abrogating the prior standard which required appearance, beyond a doubt, that plaintiff can prove no set of facts in support of his claim that would entitle him to relief). This Court must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged. *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). However, the Court need not accept asserted inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. *Kowal*, 16 F.3d at 1276.

**B.    Jurisdiction**

As a threshold matter, this Court properly has subject-matter jurisdiction over plaintiff's claims brought under 42 U.S.C. § 1983.[2] Defendants' Rule 12(b)(1) motion to dismiss these claims for lack of jurisdiction therefore fails. As stated below, plaintiff's common law claims for negligence and for negligent supervision, training and hiring will be stayed pending further

---

[2] 42 U.S.C. § 1983 provides, in relevant part: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. § 1983.

proceedings in *Barnes*.  Thus, defendants' Rule 12(b)(1) motion to dismiss these claims for lack

of jurisdiction will be denied without prejudice to refile.

**C.     Unlawful Arrest and Detention Claim**

To prevail in his Fourth Amendment claim for unlawful arrest and detention, plaintiff

must first allege facts sufficient to show that probable cause was lacking for his arrest.  Plaintiff

claims that he did not possess, attempt to sell, or transfer any crack cocaine.  Assuming that

based on plaintiff's assertions this Court determined that there was no probable cause for his

arrest, plaintiff must still establish municipal liability.  The Supreme Court laid out the standard

for municipal liability under § 1983 in *Monell v. Department of Social Services*, 436 U.S. 658

(1978):  "Local governing bodies . . . can be sued directly under § 1983 for monetary,

declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional

implements or executes a policy statement, ordinance, regulation, or decision officially adopted

and promulgated by that body's officers," which can include "constitutional deprivations visited

pursuant to governmental 'custom' even though such a custom has not received formal approval

through the body's official decisionmaking channels."  *Id*. at 690; *see also Morgan v. Dist. of

Columbia*, 824 F.2d 1049, 1058 (D.C. Cir. 1987) (finding that the District of Columbia may be

held liable under Section 1983 "only when the execution of its official policy or custom is

responsible for the deprivation of constitutional rights").  Thus, to prevail in a § 1983 claim

against the District, plaintiff "must show a course deliberately pursued by the city, 'as opposed to

an action taken unilaterally by a nonpolicymaking municipal employee,' . . . and 'an affirmative

link between the [city's] policy and the particular constitutional violation alleged.'"  *Carter v.

District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986) (quoting *Oklahoma City v. Tuttle*, 471

4

U.S. 808, 829 (1985) (Brennan, J., concurring)).

Plaintiff's complaint asserts that the actions of the undercover officer were condoned by his superiors "who evinced a custom of laxness or inaction which is the moving force behind the constitutional deprivations complained of" throughout the complaint. (Compl. ¶ 19.)  The complaint does not establish, however, that the alleged "custom of laxness or inaction" actually caused the deprivation of plaintiff's Fourth Amendment rights.  Without showing an "affirmative link" between the alleged policy, practice or custom and the constitutional violation, plaintiff's Fourth Amendment claim against the District for unlawful arrest and detention must be dismissed.

Further, the undercover officer involved in plaintiff's arrest is protected by qualified immunity so long as his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Int'l Action Center v. United States*, 365 F.3d 20, 24 (D.C. Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Plaintiff acknowledges that the undercover officer asked plaintiff where he could purchase crack. (*See* Compl. ¶ 15.)  Plaintiff does not contest that he was physically present when he and the undercover officer were subsequently approached by a woman offering to sell crack and that he remained present during the drug transaction.  (*See* Compl. ¶¶ 7, 16.)  Even viewing these facts in the light most favorable to plaintiff, this Court cannot determine that the conduct of defendant John Doe One in arresting plaintiff violated clearly established law.  Defendant John Doe One is therefore entitled to qualified immunity from plaintiff's § 1983 claim.

D.      **Overdetention Claim**

Plaintiff alleges that the District's actions in continuing to detain him after the criminal

charge was dismissed are commensurate with a long standing policy of deliberate indifference

and gross negligence in the management and supervision of the prison system by city officials.

(Compl. ¶ 25.)  Specifically, plaintiff alleges that he was arrested and detained on October 29,

2005, but after the charges against him were dismissed on November 10, 2005, plaintiff was not

released from detention until December 3, 2005.  (*See* Compl. ¶¶ 8-9.)   In *Barnes*, this Court

granted class certification for plaintiffs who alleged nearly identical claims as plaintiff in this

matter.  *See Barnes v. District of Columbia*, 242 F.R.D. 113, 120 (D.D.C. 2007).  The *Barnes*

Overdetention Class is defined as follows:

> Each person who has been, is, or in the future will be incarcerated in any District of
> Columbia Department of Corrections facility from September 1, 2005 forward; and
> who was not released, or, in the future, will not be released by midnight on the date
> on which the person is entitled to be released by court order or the date on which the
> basis for his or her detention has otherwise expired.

*Barnes*, 242 F.R.D. 113, 120 (D.D.C. 2007).  Based upon the facts alleged in plaintiff's

complaint, this Court finds that plaintiff is a member of the *Barnes* Overdetention Class.  This

Court has not yet implemented an opt out procedure that would allow plaintiff to decline class

membership.[3]  Accordingly, plaintiff's overdetention claim will be stayed pending further

proceedings in *Barnes*.  Defendants' motion to dismiss the overdetention claim will therefore be

---

[3] In *Barnes*, this Court certified a hybrid class comprised of a Rule 23(b)(2) class with
respect to claims for injunctive and declaratory relief, and a (b)(3) class with respect to claims for
money damages.  *See Barnes*, 242 F.R.D. at 12.  The Court provided that there would be no opt-
out right as to the (b)(2) class, but there would be a right to opt-out of the (b)(3) class.  *See id*.
Here, plaintiff seeks monetary damages only and therefore has a right to opt out of the (b)(3)
class when such procedures become available.

denied without prejudice to refile.

**E.      Body Cavity and Dangerous Cellmate Claims**

In Count Three of the complaint, plaintiff alleges that during his period of overdetention, he was subjected to a body cavity search, and that he was housed in a cell with a convicted murderer and subjected to bodily threats by that inmate.  (*See* Compl. ¶ 28.)  According to plaintiff, the body cavity search had no connection to any activity of plaintiff, but was prompted by the actions of another inmate who was involved in an altercation with a corrections officer. (*See* Compl. ¶ 32.)  In *Barnes*, this Court certified a "Strip Search" class of claimants that was defined as follows:

> Each person who was, or in the future will be, from September 1, 2005, forward: (1) in the custody of the Department of Corrections; (ii) taken to court from a Department of Corrections facility; (iii) ordered released by the court or otherwise became entitled to release by virtue of the court appearance because the charge on which he had been held was no longer pending or was dismissed at the hearing, was ordered released on his own recognizance, or had posted bail, was sentenced to time served, was acquitted or was otherwise entitled to release; (iv) was not the subject of any other pending cases or cases which imposed any condition of release other than personal recognizance; (v) was not the subject of any detainer or warrant; (vi) was returned from court to the D.C. Jail or CTF or other District Facility, to be processed out of Department of Corrections custody; and (vii) was subject to a strip search and/or visual body cavity search without any individualized finding of reasonable suspicion or probable cause that was concealing contraband or weapons; before being released, regardless of whether he was overdetained.

*Barnes*, 242 F.R.D. at 121.  The *Barnes* plaintiffs alleged that after leaving court they were returned to the D.C. Jail or the Central Treatment Facility where they were subjected to strip searches prior to reentry into the general population.  *Id*. at 115.  In the instant matter, plaintiff does not allege that the body cavity search was incident to his being returned to jail, but rather that it occurred in response to a jailhouse altercation.  (*See* Compl. ¶ 32.)  Under these

circumstances, plaintiff does not meet the criteria for membership in the *Barnes* Strip Search

Class.  Likewise, plaintiff's claim that he was housed with a dangerous cellmate during his

period of overdetention is distinct from the claims asserted by the *Barnes* class.  This Court will

therefore consider plaintiff's body cavity search and dangerous cellmate claims as wholly

independent of *Barnes*.

In his opposition brief, plaintiff requested leave to amend his complaint to allege that the

body cavity search and dangerous cellmate claims arose under the due process clause of the Fifth

Amendment rather than under the Eighth Amendment.[4]  (*See* Pl.'s Opp'n 18 (requesting leaving

to amend and stating that "thousands of claims have been brought against the District of

Columbia over illegal strip searches that violate the *Fifth Amendment right* of plaintiff to *due*

*process of law*") (emphasis added).)  Assuming plaintiff actually tendered an amended complaint

with a motion for leave to file, he alleges no facts sufficient to support a Fifth Amendment

violation.  As to the body cavity search claim, plaintiff has cited no authority supporting Fifth

Amendment due process recovery for this type of search.  Courts have consistently analyzed strip

search claims such as the one plaintiff advances here in accordance with the *Fourth*

*Amendment's* guarantee against unreasonable search and seizure rather than as a *Fifth*

*Amendment* violation.  *See, e.g.*, *Bell v. Wolfish*, 441 U.S. 520, 559 (1979) (establishing a Fourth

Amendment standard for judging the reasonableness of inmate searches); *Barnes*, 242 F.R.D. at

---

[4] Since "[d]ue process requires that a pretrial detainee not be punished," only convicted plaintiffs may rely upon the Eighth Amendment's ban on cruel and unusual punishment.  *See Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979).  Pretrial detainees, on the other hand, must rely on the Fifth or Fourteenth Amendment's guarantee of due process.  *Brogsdale v. Barry*, 926 F.2d 1184, 1187 (D.C. Cir. 1991).  Thus, as a pretrial detainee, plaintiff's body cavity search and dangerous cellmate claims are properly construed as a violation of the right of due process under the Fifth Amendment rather than as an alleged violation of the Eighth Amendment.

118-19; *Bynum v. District of Columbia*, 257 F. Supp. 2d 1, 2 (D.D.C. 2002) (relying on *Gary v. Sheahan*, 1998 WL 547116 (N.D. Ill. Aug, 20, 1998)). Plaintiff has not pled a Fourth Amendment claim, however. Accordingly, plaintiff's body cavity search claim must be dismissed.

Plaintiff's claim that he was unconstitutionally housed with a dangerous cellmate fails for similar reasons. For a pretrial detainee to state a claim under the Fifth Amendment based upon dangerous prison conditions, he must sufficiently allege that (1) the detainee was subjected to conditions purely punitive in nature, *see Bell*, 441 U.S. at 535 (holding that pretrial detainees must show that prison conditions are the product of punitive intent on the part of state actors in order to prove a due process violation), or (2) prison officials acted with deliberate indifference to the risk of substantial harm. *See, e.g.*, *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998) (explaining that a showing of deliberately indifferent conduct is enough to satisfy the fault requirement for due process claims brought by pretrial detainees); *O.K. v. Bush*, 344 F. Supp. 2d 44, 61 (D.D.C. 2004) (finding that claims for deliberate indifference to the serious medical needs of a pretrial detainee are properly governed by the Due Process Clause of the Fifth and Fourteenth Amendments). Here, plaintiff has failed to plead facts to support either theory of recovery. First, plaintiff has alleged no facts showing that his cell assignment was a punitive measure. Second, while plaintiff claims that defendants acted with deliberate indifference to his rights, welfare and safety, he pleads no facts showing that he brought his concerns to the attention of any prison official, or that defendants were otherwise subjectively aware of the risk. Thus, plaintiff has failed to state a claim for Fifth Amendment recovery and therefore Count Three of his complaint must be dismissed.

9

**F.       Common Law Negligence Claims**

In Counts Four and Five of the complaint, plaintiff brings claims against the District and five of its employees for negligence and negligent supervision, training and hiring.  (*See* Compl. ¶¶ 33–40.)  To the extent that these common law claims are connected to plaintiff's *Barnes* related overdetention claim, they will be stayed pending further proceedings in *Barnes*.[5] Defendants' motion to dismiss Counts Four and Five of plaintiff's complaint will therefore be denied without prejudice to refile as to the overdetention claim only.  Insofar as Counts Four and Five relate to plaintiff's unlawful arrest and detention claim (Compl. ¶ 39.), body cavity search claim (Compl. ¶¶ 36, 39.), and his dangerous cellmate claim (Compl. ¶¶ 35, 39.), those counts will be dismissed.

## III.  CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

ORDERED that defendants' Motion [5] to Dismiss plaintiff's complaint be and is hereby GRANTED in part and DENIED in part.  Specifically, it is

ORDERED that defendants' motion [5] as to Counts One and Three of the complaint is GRANTED and those counts are DISMISSED; it is further

ORDERED that Counts Two, Four and Five are STAYED in accordance with this memorandum opinion; it is further

ORDERED that defendants' Motion [5] to Dismiss Counts Two, Four and Five is DENIED as to plaintiff's overdetention claims without prejudice to refile; it is further

---

[5] Paragraph 34 of Count Four and a portion of paragraph 39 of Count Five relate to plaintiff's overdetention claim.

10

ORDERED that defendants' Motion [5] to Dismiss Counts Four and Five of plaintiff's complaint is GRANTED to the extent these counts relate to plaintiff's unlawful arrest and detention, body cavity search, and dangerous cellmate claims, and these counts are DISMISSED.

Therefore the only remaining claims in this matter are Counts Two, Four and Five only to the extent that they relate to plaintiff's overdetention claim.

SO ORDERED.


Signed by Royce C. Lamberth, United States District Judge, on March 27, 2008.