UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
                                    )
**DANIEL SIMMONS,**                 )
    Plaintiff,   )
                                    )
    v.           )    Civil Action No. 07-493 (RCL)
                                    )
**DISTRICT OF COLUMBIA,** *et al.*, )
    Defendants.  )
                                    )
_____ )

## MEMORANDUM OPINION

Before the Court is defendant District of Columbia's Motion for Partial Summary Judgment. Upon consideration of the motion, ECF No. 53, the opposition thereto, ECF No. 54, the reply brief, ECF No. 55, applicable law, and the entire record, the Court will grant in part and deny in part the motion for the reasons stated below.

### I. BACKGROUND

Plaintiff has alleged that when he was incarcerated at the D.C. Detention Facility, defendants the District of Columbia and John Does 1–5 violated his rights. Plaintiff filed his initial complaint in 2007. Compl., Mar. 15, 2007, ECF No. 1. The Court later dismissed all of the counts for failure to state a claim, except those relating to plaintiff's overdetention, which the Court stayed pending further proceedings in *Barnes v. District of Columbia*, Civil No. 06-315 (D.D.C.). Mem. Order 6, 10–11, Mar. 27, 2008, ECF No. 18. Plaintiff then filed an amended complaint, pleading four counts: (I) overdetention in violation of the Fifth Amendment; (II) an unreasonable body-cavity search in violation of the Fourth Amendment; (III) common-law negligence in overdetaining plaintiff, housing plaintiff with a convicted murderer, and

1

conducting an unreasonable body-cavity search; and (IV) common-law negligent supervision, training, and hiring in overdetaining plaintiff, housing plaintiff with a convicted murderer, and conducting an unreasonable body-cavity search. The District now moves for summary judgment as to Counts II, III, and IV of Plaintiff's Amended Complaint.[1] The District does not move for summary judgment as to Count I, because this overdetention claim has been stayed.

## II.  LEGAL STANDARD

The Court will grant a motion for summary judgment where a party shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). There is a genuine issue as to a material fact if "reasonable minds could differ" as to that fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986), *cited in Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden is on the moving party to demonstrate that there is an "absence of a genuine issue of material fact" in dispute. *Celotex*, 477 U.S. at 323. The Court will believe the evidence of the non-moving party and will draw all reasonable inferences from the record in the non-moving party's favor. *Anderson*, 477 U.S. at 255. It is not enough, however, for the non-moving party to show that there is merely "*some* alleged factual dispute": the fact must be "material." *Id.* at 247 (emphasis in original). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. Thus, summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252. "In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are

---

[1] Because only the District of Columbia has moved for summary judgment, the Court will not consider claims against John Does 1–5 at this time.

admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." D.D.C. LCvR 7(h)(1).

## III. ANALYSIS

### A. Count II: § 1983 Claim of an Unreasonable Body-Cavity Search in Violation of the Fourth Amendment

In Count II, plaintiff alleges that he was "deprived of his Fourth Amendment Right under the U.S. Constitution to be free of illegal search and seizure when he was subjected to a body cavity search ordered and/or conducted by Defendants, John Does 1–5 . . . ." Am. Compl. ¶ 17. The District now moves for summary judgment on this claim, arguing that "Plaintiff has failed to identify evidence in the record sufficient to support municipal liability against the District of Columbia for his alleged constitutional claim." Def.'s Mot. 2.

#### 1. Legal Standard for a Claim Under § 1983

42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

A § 1983 action requires two elements: first, that "the conduct complained of was committed by a person acting under color of state law," and second, that the alleged conduct deprived plaintiff of "rights, privileges, or immunities secured by the Constitution." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). The Supreme Court set out the standard for municipal liability under § 1983 in *Monell v. Department of Social Services*, 436 U.S. 658 (1978): "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunction relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers,"

3

which can include "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *See also Morgan v. Dist. of Columbia*, 824 F.2d 1049, 1058 (D.C. Cir. 1987) (finding that the District of Columbia may be held liable under § 1983 "only when the execution of its official policy or custom is responsible for the deprivation of constitutional rights"). Thus, to prevail in a § 1983 claim against the District, plaintiff "must show a course deliberately pursued by the city, 'as opposed to an action taken unilaterally by a nonpolicymaking municipal employee,' . . . and 'an affirmative link between the [city's] policy and the particular constitutional violation alleged.'" *Carter v. Dist. of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986) (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 829 (1985) (Brennan, J., concurring)).

### 2. Analysis

Even if the District violated plaintiff's Fourth Amendment rights, the District is only liable for this violation if the corrections officers were executing the District's "official policy or custom." *Morgan*, 824 F.2d at 1058. Because the District has shown that there is an absence of a genuine issue of material fact in dispute, the Court will grant summary judgment to the District.

In a motion for summary judgment, the Court will believe the non-movant's—here, the plaintiff's—evidence. *Anderson*, 477 U.S. at 255. But the non-movant must provide *some* evidence for the Court to consider, and this evidence must be evidence on which a jury could reasonably find for the non-movant. *Id.* at 252. Although plaintiff has provided evidence in support of his claim that this body-cavity search violated the Fourth Amendment, he has not provided *any* evidence to support his claim that the corrections officers were executing the District's official policy or custom.

4

The District has provided several pieces of evidence in support of its position. The District's official policy on strip searches provides, in relevant part: "Staff may conduct a strip search where there is a reasonable belief that contraband may be concealed on the person, a good opportunity for concealment has occurred, or there is increased need for security." Defs.' Ex. 2 at 3 ¶ 8(b)(1). The District's official policy on body-cavity searches provides, in relevant part:

> When there is reasonable belief that an inmate has ingested contraband or concealed contraband in a body cavity and other methods of search are inappropriate or likely to result in physical injury to the inmate, the Warden or designee may authorize the placement of an inmate in a room to allow staff to closely observe the inmate. The inmate shall be held in the dry cell until the inmate has voided the contraband or until sufficient time has elapsed to preclude the possibility that the inmate is concealing contraband.

Defs.' Ex. 2 at 3 ¶ 9. The District's training materials address training on strip searches and body-cavity searches. Defs.' Ex. 2 at 97 ¶ III(A). The District submitted a declaration from the Chief of Security of the D.C. Department of Corrections, in which he stated that "DOC's practice regarding strip searches is consistent with its policies. . . . Based on my knowledge of DOC's policies, if a radio was lost, according to Plaintiff's allegations, a strip search of Plaintiff, if performed would have been consistent with DOC policies." Andrew Watford Decl. ¶¶ 8, 17.

These policies do not, on their face, violate the Fourth Amendment. Inmates maintain some Fourth Amendment rights in prison. *Bell v. Wolfish*, 441 U.S. 520, 558 (1979). The Fourth Amendment permits searches that are reasonable. U.S. Const., amend IV. The standard for evaluating the reasonableness of a visual body-cavity search of a prisoner "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* at 559. A corrections officer can conduct a visual body-cavity search when he has less than probable cause. *Id.* at 560. But he cannot conduct the search when he has no cause or when there is no need for the search.

Because the District's official policy provides that corrections officers can conduct strip searches and body-cavity searches when they have a "reasonable belief" that the search will find contraband, its policies do not violate the Fourth Amendment.

Although the District may very well have a custom of ignoring these policies, plaintiff has provided no evidence in support of that custom. In his statement of genuine issues of material facts in dispute, plaintiff states: "While Defendant had policies and procedures governing strip searches, Defendant failed to implement the policies and procedures governing probable cause to conduct a strip search." Pl.'s Statement of Material Facts ¶ 4. In support of this assertion, plaintiff states that the District has had a "long history of failure to follow its stated policies. Beginning in 2002 to the present there have been several class action cases brought against the District of Columbia for the faulty interpretation of its strip search policies." Pl.'s Opp'n 11. The Court cannot consider evidence presented in these class-action cases, especially when there have been no factual findings in those cases. The opinions to which plaintiff cites either resolved a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Bynum v. Dist. of Columbia*, 257 F. Supp. 2d 1 (D.D.C. 2002), or approved a settlement of a class action, *see Bynum v. Dist. of Columbia*, 384 F. Supp. 2d 342 (D.D.C. 2005). A court does not make factual findings when ruling on a 12(b)(6) motion to dismiss, because it must accept as true all allegations contained in plaintiff's complaint, without the benefit of discovery. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nor does a court make factual findings when approving a settlement. Plaintiff also cites to *Barnes v. District of Columbia*, Civil No. 06-315 (D.D.C.), currently before this Court, in which the Court has similarly not made any factual findings. Indeed, the Court earlier denied defendant's motion to consolidate *Barnes* with this case. Order, Mar. 10, 2009, ECF No. 28. Plaintiff, thus, has not cited to any evidence in support of his bare

assertions. Nor has plaintiff provided any evidence in his exhibits, which the Court reviewed carefully. These assertions are insufficient to contradict the District's evidence. Thus, the District has shown that there is no genuine issue of material fact in dispute, and the District is entitled to judgment as a matter of law on plaintiff's Fourth Amendment claim. Defendant's motion for summary judgment will be granted as to Count II. Because John Does 1–5 have not moved for summary judgment, the Court will not consider at this time whether the individual officers are liable under § 1983.

### B. Counts III and IV: Common-Law Claims of Negligence and Negligent Supervision, Training, and Hiring

In Count III, plaintiff alleges that defendants acted negligently by (1) overdetaining plaintiff, Am. Compl. ¶ 25, (2) housing plaintiff with a convicted murderer, *id.* at ¶ 27, (3) and conducting an unreasonable body-cavity search, *id.* at ¶ 29. In Count IV, plaintiff alleges that defendant the District of Columbia negligently supervised, trained, and hired its employees, agents, and officials, which resulted in (1) overdetaining plaintiff, (2) housing plaintiff with a convicted murderer, and (3) conducting an unreasonable body-cavity search. *Id.* at ¶ 34.

#### 1. Common-Law Claims Relating to Plaintiff's Overdetention

As the Court held in its previous order, plaintiff's common-law claims relating to his alleged overdetention will continue to be stayed pending further proceedings in *Barnes*. Mem. Order 10. Defendant's motion for summary judgment will be denied without prejudice to refile as to the common-law overdetention claims.

#### 2. Common-Law Claims Relating to Plaintiff's Improper Housing

The Court has supplemental jurisdiction over common-law claims only to the extent that they raise issues that "form part of the same case or controversy" as the claims arising under federal law. 28 U.S.C. § 1367(a). This means that the federal and common-law claims must

7

"derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *Doe ex rel. Fein v. Dist. of Columbia*, 93 F.3d 861, 871 (D.C. Cir. 1996). The Court may decline to exercise jurisdiction over common-law claims if "the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3).

The Court previously dismissed plaintiff's constitutional claim stemming from his allegation that he was housed with a dangerous cellmate. Mem. Order 9. Plaintiff did not re-allege any such constitutional claim in his amended complaint. *See* Am. Compl. The federal claims that remain before the Court, therefore, are the stayed overdetention claim and the body-cavity search claim against defendants John Does 1–5. The Court finds that the housing claims do not derive from a common nucleus of operative fact as the overdetention and body-cavity search claims. Each claim relies on an independent set of facts that would require independent proof. The Court, therefore, does not have supplemental jurisdiction over plaintiff's improper housing claims. Defendant's motion for summary judgment will be granted as to the common-law improper housing claims.

### 3. Common-Law Claims Relating to Plaintiff's Body-Cavity Search

As discussed above, the Court will grant summary judgment to the District on plaintiff's body-cavity search claim. But because defendants John Does 1–5 have not moved for summary judgment, plaintiff's federal claim against those defendants as to his body-cavity search is still pending before the Court. Because plaintiff's common-law claims against all defendants as to his body-cavity search derive from a common nucleus of operative fact as the still-pending federal claim, the Court retains supplemental jurisdiction over these common-law claims.

In its motion, the District argues three grounds for dismissal of these common-law claims: "(1) the law of the case bars the plaintiff from reviving these claims; (2) the plaintiff

cannot meet his burden of proof because he has not designated an expert witness; and (3) the evidence in the record does not support plaintiff's common-law claims." Def.'s Mot. 10. Plaintiff responds that there is "no requirement for an expert to testify that it was negligence . . . [because the] radio they were looking for was too large to be secreted in any body cavity of Plaintiff which the jury is quite able to see and determine for themselves without an expert." Pl.'s Opp'n 1.

The Court disagrees with the District as to its first ground. Although the Court earlier dismissed plaintiff's common-law claims, it only did so because it also dismissed the related federal claims. Mem. Order 10. After plaintiff realleged those claims and corresponding federal claims in his Amended Complaint, the Court could properly consider them again.

The Court agrees with the District as to its second ground. The D.C. Court of Appeals has held:

> The plaintiff in a negligence action bears the burden of proof on three issues: the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between that deviation and the plaintiff's injury. . . . We have repeatedly held that the standard of care owed by the District of Columbia to persons in its custody is a matter beyond the ken of the average juror that *requires expert testimony*.

*Clark v. Dist. of Columbia*, 708 A.2d 632 (D.C. 1997) (emphasis added). This is a very clear statement that plaintiff must designate an expert witness for any negligence claim. The parties agree that "Simmons has not presented an expert witness, and discovery in the case closed on April 2, 2010." Defs.' Statement of Material Facts ¶ 14.[2] Because plaintiff did not present an expert witness, it would be impossible for plaintiff to succeed on these negligence claims at trial. The Court need not reach the District's third ground. Thus, the District has shown that there is no

---

[2] Plaintiff failed to respond to the District's assertion of this fact in his statement of material facts, so plaintiff has admitted this fact. *See* D.D.C. LCvR 7(h)(1).

9

genuine issue of material fact in dispute, so defendant's motion for summary judgment will be granted as to the common-law body-cavity search claims.

## IV.     CONCLUSION

For the reasons stated, the Court will grant in part and deny in part defendant District of Columbia's Motion for Partial Summary Judgment.

The Court will grant defendant's motion as to Count II of the Amended Complaint.

The Court will deny defendant's motion without prejudice as to claims under Counts III and IV relating to plaintiff's overdetention.

The Court will grant defendant's motion as to claims under Counts III and IV relating to plaintiff's improper housing and plaintiff's body-cavity search.

In accordance with the Court's previous order, ECF No. 18, the common-law claims relating to plaintiff's overdetention will remain stayed pending further proceedings in *Barnes v. District of Columbia*, Civil No. 06-315 (D.D.C.).

A separate order consistent with this memorandum opinion shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on November 9, 2010.